UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAMIEN K. JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-0080** |
| **JEFFERSON PARISH SHERIFF OFFICE, ET AL.** | **SECTION "D"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.     Background**

   **A.     Complaint (ECF No. 3)**

Plaintiff Damien Kentreal Johnson ("Johnson"), a pretrial detainee housed in the Jefferson Parish Correctional Center ("JPCC"), filed this *pro se* and *in forma pauperis* suit pursuant to 42 U.S.C. § 1983 against the Jefferson Parish Sheriff's Office ("JPSO") and Jefferson Parish Sheriff Joseph Lopinto. ECF No. 3. Johnson alleges that he is a "Rasta/Nazarite"[1] follower and has taken a vow to never cut his hair to fulfill his religious obligation. *Id*., ¶IV, at 4. He claims that he is a pretrial detainee being punished by JPCC for exercising his First Amendment right to freedom of

---

[1] The Rastafari movement ("Rasta") is a religious movement with roots back to the early 1930s, and was common among working-class Blacks in Jamaica designed to pay respect to their African heritage. https://www.newworldencyclopedia.org/entry/Rastafari. Many Rastafari take the Nazarite vow, found in the old Testament of the Christian Bible which calls for one to refrain from cutting their hair,. *Id*. A Nazarite was an Israelite of biblical times who consecrated their lives to God thru vows requiring abstention wine, refraining from cutting hair, and avoidance of  corpses, graves, and tombs. https://www.newworldencyclopedia.org/entry/Nazirite/. The tradition may still be followed today by Jews and non-Jews by taken the verbal declaration found in the Bible. *Id*.

religion. As relief, he seeks an order for JPCC to pay him $100,000 plus court costs for violation of his constitutional rights and to allow him to practice his religion by growing his hair without consequence. *Id*., ¶V, at 5.

Attached to his complaint is a grievance complaint form in which he asserts these same claims. ECF No. 3-1, at 1. He also indicates in the grievance complaint that he underwent a disciplinary hearing where he explained to the board that he was Nazarite/Rasta. *Id*.

### B. Amended Complaint (ECF No. 4)

In his supplemental statement of his claim, Johnson states that, at the time of filing, he had been housed in JPCC for nine months and had been under "Nazarine vow"[2] for 13 years. ECF No. 4. He claims that JPCC and the JPSO have taken away his privileges for growing his hair and refusing to cut his dreadlocks, which are part of his Rasta religion. He claims that, because he has long hair, he has not been allowed on the yard for recreation or allowed to use toe or finger nail clippers, which are only available in the yard. He claims that he cannot use the phone and is unable to contact his family or friends or people who can help him with his criminal case. He also claims this has prejudiced his criminal case and caused emotional pain and suffering. He also is not allowed to buy commissary items, which has made his incarceration harder than other inmates.

Johnson asserts that he has notified Lt. Christopher Morris, Deputy Melvin Francis, Major Olsen, Mrs. Banner, and others at the jail about his religious status and, to no avail, he has asked for his privileges to be restored. He argues that the restrictions on his privileges is a violation of his federal and state constitutional rights, deliberate indifference, cruel and unusual punishment,

---

[2] Plaintiff apparently refers to the Nazarite vows not Nazarene. There is no connection between the Church of the Nazarene and the Rasta movement or Nazarite vows. The Church of the Nazarene is an American protestant denomination similar in mission to the Methodist Church. https://www.britannica.com/topic/Church-of-the-Nazarene.

negligence, and discrimination, citing the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and *Ware v. La. Dep't of Corrs.*, 866 F.3d 263 (5th Cir. 2017).

As additional relief, he seeks a preliminary injunction to require that he get his privileges restored while still exercising his religious right to grow his hair, $100,000 in punitive damages, $100,000 compensatory damages, and court costs. He also adds that he is suing the defendant in his individual and official capacities.

Johnson attached another copy of his grievance complaint to this pleading and this copy reflects that his grievance was accepted and referred for response. ECF No. 4-1, at 1.

## II. Standards for Statutory Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v.*

*Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.    Analysis

#### A.    Claims Against JPSO

Johnson named the Jefferson Parish Sheriff's Office as a defendant. The sheriff's office, however, is not a proper party and is not a legal entity capable of suing or being sued under § 1983. Under Fed. R. Civ. Proc. 17(b), Louisiana law governs whether the sheriff's office has the capacity to sue or be sued. To possess such a capacity under Louisiana law, an entity must qualify as a "juridical person," which is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24. The State of Louisiana grants no such legal status to any parish sheriff's office. *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dept.*, 350 So.2d 236 (La. App. 3d Cir. 1977). Thus, the parish sheriff's offices in Louisiana are not legal entities capable of suing or being sued. *Regur v. Lichfield*, 700 F. Supp. 863, 965 (M.D. La. 1988).

Accordingly, the Jefferson Parish Sheriff's Office is not a juridical person capable of being sued and the claims against it must be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

#### B.    Claims Against Sheriff Lopinto

##### a.    Individual Capacity

A state actor, like Sheriff Lopinto, may be liable under § 1983 only if he was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists

4

between an act of the official and the alleged constitutional violation. *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). Other than naming Sheriff Lopinto as a defendant, Johnson alleges no claims against the Sheriff directly. Without some alleged causal link between an act by the Sheriff and his claims, Johnson has failed to allege a non-frivolous claim against Sheriff Lopinto.

Accordingly, Johnson's claims against Sheriff Lopinto in his individual capacity should be dismissed pursuant to § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

      **b.**    **Supervisory and Official Capacity**

As a supervisory official, Sheriff Lopinto, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* or vicarious liability simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A & M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). On the other hand, a supervisory official may be held liable for his subordinates' actions only if the named official implemented an unconstitutional policy that causally resulted in plaintiff's injury. These same policy concerns could impose liability against a policymaking official, like Sheriff Lopinto, in an official capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Sheriff Lopinto would in reality be a claim against the local governmental body. The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an

5

official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*Spiller v. City of Texas City, Pol. Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citations, quotation marks, and brackets omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County*, 981 F.2d 237, 245 (5th Cir. 1993); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, the plaintiff must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. *See*, *e.g.*, *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003).

Under a broad reading of his *pro se* complaints, Johnson alleges that JPCC and JPSO caused restrictions on his privileges and commissary access to be imposed by the disciplinary board when he refused to voluntarily cut his hair grown pursuant to his religious beliefs. He claims that these restrictions violated his First Amendment right to freedom of religion and the provisions of RLUIPA. When Johnson presented these claims to JPCC officials in his grievance complaint, it was marked by officials as a complaint related to "policy." ECF No. 4-1, at 1. To afford Johnson every benefit of a broad construction of his claims, the court will assume that his claims involve a grooming policy at the prison which required him to either cut his hair or be placed in administrative confinement where he faced restrictions on his privileges and commissary access. Thus, the Court will proceed to address the substance of the claims against Sheriff Lopinto in his supervisory role and official capacity arising from the jail's policy on hair and privileges as alleged by Johnson.

        **1.**        <u>**First Amendment Freedom of Religion**</u>

A prison policy or practice will not be found unconstitutional if it is reasonably related to a legitimate penological objective of the facility. *Hay v. Waldron*, 834 F.2d 481, 487-87 (5th Cir. 1987). This general tenet of constitutional law has been upheld even when a regulation prevents inmates from attending religious services central to their practice. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 360 (1987). This rule also has been applied by the courts to prison regulations that required Rastafarians to cut their hair, even though keeping one's hair long and unwashed is a tenet of the Rastafari religion. *See Scott v. Miss. Dep't of Corrs.*, 961 F.2d 77 (5th Cir. 1992), and *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). Long hair can and has in the past also been used by inmates as a means of secreting contraband and weapons. Because of this, the courts have upheld under First Amendment challenges numerous regulations requiring male inmates to keep their hair short because of security concerns, even in the face of a religious freedom challenge. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005); *Diaz v. Collins*, 114 F.3d 69(5th Cir. 1997); *Thompson v. Scott*, 86 F. App'x 17 (5th Cir. 2004).

While it is true that Johnson is a pretrial detainee, the security and hygiene concerns are the same. Johnson's First Amendment rights were not violated by the restrictions on his privileges as a response or potential compromise to his decision not to cut his hair. In all, he has been allowed to *keep* his Rastafari hair as he believes necessary to protect his religious vows and the prison officials are able to maintain security and protect the integrity of the disciplinary rules and grooming policies at the jail. *Johnson v. Bolivar Cnty.*, No. 08-266, 2009WL4855988, at *4 (N.D. Miss. Dec. 9, 2009). He therefore has failed to allege any violation of his First Amendment right because he has been allowed to continue that religious practice.

For these reasons, Johnson's First Amendment claims against Sheriff Lopinto in his supervisory and official capacity should be dismissed pursuant to § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

### 2. **RLUIPA**

Johnson generally invokes RLUIPA[3] which prohibits imposing a substantial burden on an inmate's religious exercise unless that burden furthers a compelling interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc–1(a). "Congress enacted RLUIPA to address 'frivolous or arbitrary' barriers impeding [prisoners'] religious exercise . . . ." *Davis v. Davis*, 826 F.3d 258, 264 (5th Cir. 2016) (quoting *Cutter*, 544 U.S. at 716). Congress also intended "'to provide very broad protection for religious liberty.'" *Holt v. Hobbs*, 574 U.S. 352, 356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)).

RLUIPA provides a private cause of action for an inmate to enforce this right. 42 U.S.C. § 2000cc–2(a). It states, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1)     is in furtherance of a compelling governmental interest; and
> (2)     is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc–1(a).

RLUIPA established a burden-shifting framework for analysis. *Ali v. Stephens*, 822 F.3d 776, 782 (5th Cir. 2016). First, the plaintiff must make two showings: "(1) the relevant religious exercise is 'grounded in a sincerely held religious belief' and (2) the government's action or policy 'substantially burden[s] that exercise' by, for example, forcing the plaintiff 'to engage in conduct

---

[3] Religious Land Use and Institutionalized Persons Act of 2000, § 2 *et seq.*, now codified at 42 U.S.C. § 2000cc *et seq*.

that seriously violates [his or her] religious beliefs.'" *Id*. at 782-83 (quoting *Holt*, 574 U.S. at 361). If plaintiff satisfies these requirements, the burden shifts to the government, which must "show that its action or policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest." *Id*. at 783.

In the instant case, Johnson has failed to allege both components necessary to state a non-frivolous claim under RLUIPA. As noted above, Johnson has *not* been required to cut his hair or "engage in conduct that seriously violates [his] religious beliefs." As Johnson notes repeatedly, he has refused to cut his hair. Following a hearing on his refusal, the jail officials have allowed him to keep his hair. He, therefore, has not alleged that he has endured a substantial burden on his freedom of exercise since he is in fact still exercising his vow to continue growing his hair.

The case, *Ware v. La. Dep't of Corrs.*, 866 F.3d 263 (5th Cir. 2017), cited by Johnson in his amended complaint is inapplicable here. In *Ware*, the Fifth Circuit invalidated a Louisiana Department of Corrections prison regulation requiring a Rastafarian inmate to cut off his dreadlocks. *See Ware*, 866 F.3d at 273. The trial court dismissed the inmate's claims based on the reasonableness of the policy as a safety and administrative concern. After considering the policy mandating short hair for hygiene and safety reasons, and finding lesser accommodations to exist, the United States Fifth Circuit Court of Appeals determined that requiring the Rastafarian inmate, found to be sincere and adherent in his beliefs, to cut his hair placed a substantial burden on the inmate's religious beliefs. *Id*. at 269. The matter was remanded for further proceedings.

Unlike the plaintiff in *Ware*, Johnson has suffered no similar burden on his religious practices because he was not forced to cut his hair. As a lesser accommodation, not followed in *Ware*, Johnson has been allowed to keep his hair in accord with his Rastafari/Nazarite vows. Thus, unlike the policy questioned in *Ware*, the JPCC officials have not mandated or forced Johnson to

cut his hair. Instead, his desires were accommodated with lesser restrictions and with only minimal intrusion into his daily comfort. *See Cutter*, 544 U.S. at 722 ("We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests."). The minimal restrictions imposed on Johnson as a result of his rightful choice to keep his long hair, contrary to the grooming policies of the prison, are not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995).

Therefore, Johnson has not pointed to a prison policy that has caused a substantial burden on his ability to practice his beliefs and adhere to his vows. He, therefore, has failed to state a non-frivolous claim under RLUIPA. Johnson's RLUIPA claims against Sheriff Lopinto in his supervisory and official capacity should be dismissed pursuant to § 1915 and § 1915A as frivolous and otherwise for failure to state a claim for which relief can be granted.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff Damien Kentreal Johnson's 42 U.S.C. § 1983 complaint asserting First Amendment and RLUIPA claims against defendants Jefferson Parish Sheriff's Office and Sheriff Joseph Lopinto, in his individual and official capacities, be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) and § 1915A, as frivolous and otherwise for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

      New Orleans, Louisiana, this <u>14th</u> day of March, 2024.

_____<br>
**KAREN WELLS ROBY**<br>
**UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.